UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BONNE BEECHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:07-cv-1453-DFH-TAB |
| | ) | |
| ROCHE DIAGNOSTICS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

ENTRY ON MOTION FOR SUMMARY JUDGMENT

Plaintiff Bonne Beecher was hired by defendant Roche Diagnostics Corporation as a customer service representative in 2001. It did not take long for Beecher to become disenchanted with Roche's personnel policies, and she began to believe that Roche made it difficult for African-American employees to advance in the corporation. She complained to Roche supervisors about what she perceived to be Roche's racial discrimination, and in 2004 she filed an EEOC charge of discrimination. The 2004 EEOC charge went nowhere, but Beecher believes that she was denied promotions because she filed that charge and made other, less formal complaints of race discrimination at Roche. She filed this lawsuit under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 alleging race discrimination and retaliation. Roche has moved for summary judgment on all claims. Beecher has abandoned her race discrimination claims.

Because Beecher has offered no evidence to show that Roche retaliated against her because she complained of race discrimination, the motion is granted.

### Summary Judgment Standard

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate when there are no genuine issues of material fact, leaving the moving party entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). The moving party must show that there is no genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party need not positively disprove the opponent's case; rather, it may prevail by establishing the lack of evidentiary support for that case. See *id.* at 325. Where the non-moving party bears the burden of proof on an issue at trial and the motion challenges that issue, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e)(2); see also *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). "Bare allegations not supported by specific facts are not sufficient in opposing a motion for summary judgment." *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004), quoting *Hildebrandt v. Illinois Dep't of Natural Resources*, 347 F.3d 1014, 1036 (7th Cir. 2003).

A factual issue is material only if resolving the factual issue might change the suit's outcome under the governing law.  See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual issue is genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party.  See *id.*  In deciding a motion for summary judgment, a court may not assess the credibility of witnesses, choose between competing inferences, or balance the relative weight of conflicting evidence; the court must view all the evidence in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party.  *Id.* at 255.

*Facts for Summary Judgment*

I.     *Beecher's Employment History*

These facts are not necessarily all true in an objective sense, but this account reflects application of the summary judgment standard to the parties' evidence, giving Beecher the benefit of conflicts in the evidence and favorable inferences that might be drawn from it.  Roche hired Beecher as a customer service representative on June 25, 2001.  Beecher Dep. Ex. 9.  Prior to working at Roche, Beecher had worked in sales or customer service for more than ten years.  Beecher Dep. Ex. 4.  She earned a Bachelor of Science degree from Eastern Illinois University.  *Id.*  As a customer service representative at Roche, Beecher was responsible for answering telephone calls from customers and processing orders.  Nance Dec. ¶ 5.

-3-

Todd Seifert was Beecher's supervisor in 2001, and he completed her first annual performance review at Roche.  Seifert gave Beecher a score of "Meets RDC Standards," defined as being "steady, reliable, and competent."  Beecher Dep. Ex. 11.  She received the same score in 2003, 2004, and 2005.  Beecher Dep. 110, Exs. 12, 15-16.   Roche promoted Beecher from a CSR (customer service representative) to a CSRII in August 2002.  Michele Sylvester became Beecher's supervisor in 2003.  Sylvester Dec. ¶ 4.  In 2003, Beecher expressed a desire to be promoted to a customer fulfillment specialist.  *Id.*, ¶ 9.  Sylvester told Beecher that she needed to develop some additional skills before obtaining a promotion, and Sylvester indicated that she was willing to work with Beecher to develop these skills.  Beecher Dep. Ex. 12.  Beecher was not promoted.

Beecher filed a complaint with the Indiana Civil Rights Commission and the EEOC on May 3, 2004, alleging that she was passed over for "esales" positions because of her race, gender, and age.  Beecher Dep. Ex. 41.  She eventually withdrew the complaint.  Beecher Dep. 157.  After Beecher filed the complaint, she continued to work at Roche and did not experience any reduction in pay or benefits or change in job duties.  Smith Dec. ¶ 4.[1]

---

[1]Beecher argues that Smith's and four others' declarations are inadmissible because they are undated.  Beecher is correct that the declarations should have been dated.  See 28 U.S.C. § 1746.  Similar oversights in submitting summary judgment affidavits and documents are not unusual (from both moving and non-moving parties) and often can be corrected.  Roche corrected this error with its supplemental submission of evidence that clarifies when the declarations were signed, Dkt. No. 55, and allowing the correction causes no unfair prejudice to Beecher.   Section 1746 requires substantial compliance, and the original

(continued...)

Seifert again became Beecher's supervisor in 2005.  In 2006, he gave her an annual review rating of "Meets Expectations."  Beecher Dep. Ex. 22.  Kenyada Griffin, an African-American, became Beecher's supervisor in July 2006.  Griffin Dec. ¶ 5.  Beecher told Griffin that she was frustrated about not receiving promotions.  Griffin told Beecher that she was an average worker and that she needed to do more to receive promotions, and Griffin recommended projects for Beecher to complete.  *Id.*, ¶¶ 7, 9.  In 2007, Griffin gave Beecher an annual review rating of "Meets Expectations."  Beecher Dep. Ex. 27.  Susan Borter became Beecher's supervisor, and she gave her an annual review score of "partially achieved" in 2008, meaning that Beecher's performance met some but not all expectations.  Beecher Dep. 266, Ex. 31.  This score was lower than Beecher's previous scores, but Beecher had suffered a family tragedy – her granddaughter was murdered – during the evaluated period.  Dkt. No. 50, Ex. 21.

Beecher filed a second Indiana Civil Rights Commission/EEOC charge on February 20, 2007 alleging race discrimination and retaliation.  Beecher Dep. Ex. 42.  After Beecher filed that charge, she continued to work at Roche and did not experience any reduction in pay or benefits or change in job duties.  Smith Dec. ¶ 6.

II.    *Promotions Denied to Beecher*

---

[1](...continued)
declarations appear to comply with the statute in all other aspects.

In 2004, Robert Baker formed a new inside sales team of four inside sales specialists.  An inside sales specialist is responsible for calling customers and soliciting business.  Baker Dec. ¶ 4.  The position required a college degree in business, life science, or medical technology.  *Id.*  Baker was the hiring manager for the jobs.  *Id.*, ¶¶ 6, 18.  Beecher applied for a job on the team but was not selected.  *Id.*, ¶¶ 6, 11.  Baker was not aware that Beecher had complained of discrimination.  *Id.*, ¶ 20.  However, Baker consulted with Sylvester when he decided not to hire Beecher.  Sylvester knew that Beecher had complained generally about promotions at Roche, but the record contains no evidence of Sylvester being aware of Beecher's complaints of race discrimination at the time.  *Id.*, ¶ 11; Dkt. No. 50, Exs. 1-2.[2]  Sylvester told Baker that Beecher was an average performer.  *Id.*

Baker hired four other people for the inside sales positions:  Charles Schroeder, Steven Bye, Paula Stansberry, and Jonathan Cash.  Schroeder was an instrumentation sales specialist for Roche, had a background in sales, and a bachelor of science in genetic engineering.  Baker Dec. ¶ 7.  Bye was a products manager in Roche's marketing department, had received "exceeds RDC standards" ratings on reviews, had a bachelor of science degree, and had worked in laboratories and performed clinical studies.  *Id.*, ¶ 8.  Stansberry worked in customer technical support, had a solid understanding of the products Roche was

---

[2]Several years later, in 2007, Baker wrote an email that was critical of what he called Beecher's "agenda at work."  Dkt. No. 50, Ex. 22.

marketing to customers, and had a degree in biology.  *Id.*, ¶ 9.  Cash worked as a CSR, had a bachelor of science degree, was regarded by Baker as "the number one CSR at Roche," received a rating of "exceeds RDC standards" on his performance evaluation, and received strong recommendations from his supervisor.  *Id.*, ¶ 10.  According to Beecher, Cash supposedly "had an in" with Baker and received an interview before the position was posted.  Beecher Dep. 148.

Stansberry resigned in January 2006, and Baker posted another opening for an inside sales specialist.  Beecher applied, but Baker hired Karen West.  Again, Baker was not aware that Beecher had engaged in any protected activities.  Baker Dec. ¶ 20.  West had a bachelor of science degree in biology, worked in marketing support at Roche, had previous inside sales experience with another company, and received ratings of "exceeds RDC standards."  *Id.*, ¶ 15.  Beecher had continued to receive "meets RDC standards" scores since her first application to Baker.

Also in January 2006, Kari Nance hired two inside sales specialists in a different department.  Nance Dec. ¶ 8.  Beecher did not apply for the jobs, and she was not hired.  *Id.*, ¶¶ 8, 11.  At the time that Nance hired other employees, she did not know that Beecher had complained of discrimination.  *Id.*, ¶ 16.

Two contract specialist positions opened in 2007. William Finnegan was the hiring manager for the positions. Finnegan Dec. ¶ 3. Beecher applied for one of the positions. *Id.*, ¶ 9. Finnegan claims that he was not aware that Beecher had complained of discrimination. *Id.*, ¶ 14. However, in November 2006, Beecher carbon-copied Finnegan on an email she wrote complaining of race discrimination at Roche, Dkt. No. 50, Ex. 14, so the court assumes for purposes of summary judgment that he was aware of the complaint. The contract specialist job required leadership abilities, innovation and execution skills, and an ability to prioritize tasks and work independently. Finnegan Dec. ¶ 4. Finnegan selected Jeffrey Cannon and Lori Goodson for the positions. *Id.*, ¶ 5. No one at Roche told Finnegan not to select Beecher for the position. *Id.*, ¶ 11.

Finnegan claims that Cannon and Goodson were the most qualified candidates for the positions. *Id.*, ¶¶ 7-8. Cannon had a bachelor of science degree in business administration. He had worked in a bank as an operations manager and senior sales associate, which required him to run daily operations for the bank. At Roche, Cannon had worked as an accounts receivable administrator, production technician, customer service representative, and e-commerce specialist. *Id.*, ¶ 7. Goodson had a bachelor's degree in business management. *Id.*, ¶ 8. She had management experience, including experience managing a seventy-five person work force in a plant. At Roche, Goodson worked as a process support specialist with managerial responsibilities. She had received "exceeds expectations" scores on her evaluations. *Id.* Beecher claimed that she

-8-

was more qualified for the position because she had experience with the products sold by the contract specialists.  Beecher Dep. 299.

III.    *Beecher's Complaints of Race Discrimination*

Beecher made several formal and informal complaints about perceived race discrimination at Roche.  On May 3, 2004, Beecher filed an EEOC charge of race, age, and sex discrimination.  Dkt. No. 50, Ex. 5.  On June 20, 2005, Beecher wrote to Roche vice president of human relations Tiffany Olson to report that Roche discriminated against African-Americans.  Dkt. No. 50, Ex. 6.  On September 28, 2005, Beecher sent an email to Seifert claiming that African-Americans were rarely given "assignments of substance."  Dkt. No. 50, Ex. 8. Seifert responded that "one thing that I will never tolerate is that decisions were based on race."  *Id.*  On May 1, 2006, Beecher emailed a senior Roche official asking to meet about the lack of diversity in Roche's workforce.  Dkt. No. 50, Ex. 12.  Roche employee Diane Smith learned of this email and asked Beecher why she was contacting the senior official.  *Id.*  On May 3 and 4, 2006, Beecher emailed Seifert and Smith to complain about the lack of opportunities for minorities at Roche.  Dkt. No. 50, Ex. 11.  Smith responded:  "Bonne, what is this about?"  *Id.*  On November 29, 2006, Beecher emailed Smith and carbon-copied several Roche officials, including Tiffany Olson, Kenyada Griffin, Bill Finnegan, and Todd Seifert, to complain about discrimination at Roche.  Dkt. No. 50, Ex. 14.

On February 9, 2007, Beecher emailed Cris Wilbur and Tiffany Olson to complain about discrimination.  Dkt. No. 50, Ex. 15.

*Discussion*

Roche has moved for summary judgment on Beecher's Title VII and section 1981 retaliation claims.  The court agrees with Roche that Beecher does not have evidence that Roche retaliated against her because she complained of discrimination.[3]

---

[3]Beecher also alleged race discrimination claims under Title VII and § 1981, but she has abandoned these claims.  Pl. Br. 1 n.1.  Roche's motion for summary judgment is granted as to the race discrimination claims.

I.    *Statutes of Limitations*

Roche first argues that Beecher's Title VII claim is time-barred to the extent that it relies on adverse employment actions that occurred before April 26, 2006, which was three hundred days before February 20, 2007, the date that Beecher filed her second EEOC charge.   Beecher apparently concedes that any adverse actions that occurred before April 26, 2006 cannot be the basis for a Title VII claim.  See 42 U.S.C. § 2000e-5(e)(1).  Rather, Beecher asserts that she can base her section 1981 claim on conduct that occurred up to four years before she filed this lawsuit on November 13, 2007.  The statute of limitations for her section 1981 claim is four years.  See 28 U.S.C. § 1658(a); *Dandy v. United Parcel Service, Inc.*, 388 F.3d 263, 269 (7th Cir. 2004) (applying four year statute of limitations to § 1981 retaliation claim).  Beecher filed her section 1981 claim in enough time to cover all of the acts that she alleges to be retaliatory.  Title VII may not afford relief to Beecher for some of the alleged conduct, but section 1981 with its longer statute of limitations allows her to seek relief for conduct dating back to November 2003.

II.    *The Merits*

Title VII prohibits employers from discriminating against an employee because she opposed "any practice made an unlawful employment practice" by Title VII or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VII.  42 U.S.C. § 2000e-3(a).

Section 1981 also has been construed to prohibit employers from retaliating against employees for complaints of race discrimination.  See *CBOCS West, Inc. v. Humphries*, 128 S. Ct. 1951, 1954-55 (2008); *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009).  The analysis for Beecher's Title VII claim and her section 1981 claim is the same, and the court discusses both claims simultaneously.  See *Stephens*, 569 F.3d at 786.

A plaintiff may show unlawful retaliation through the direct method or the indirect method of proof.  In her brief, Beecher chose to proceed under the direct method of proof.  To show retaliation under the direct method of proof, Beecher must show (1) that she engaged in a protected activity, (2) that she suffered a materially adverse action by Roche, and (3) that a causal relationship existed between the first two elements.  *Id.*

The parties agree that Beecher can satisfy the first and second elements of a retaliation claim.  She engaged in protected activity when she filed her first EEOC charge in May 2004 and complained of race discrimination from 2003 through 2007.[4]  She suffered adverse actions when Roche decided not to promote

---

[4]It is not entirely clear that Beecher's evidence would allow a finding that she actually engaged in protected activity before she applied for the inside sales job in January 2004.  In April 2003, Beecher complained about office politics and inconsistency in hiring practices.  Dkt. No. 50, Ex. 1.  In June 2003, she complained about an evaluation she received, but she did not cite concerns of discrimination.  Dkt. No. 50, Ex. 2.  In August 2003, she complained about a lack
(continued...)

her to the inside sales positions in 2004 and 2006 and the contract specialist positions in 2007.  Beecher asserts that she suffered adverse actions that gave rise to retaliation claims on several other occasions from 2002 through 2007, but the record contains evidence only about the inside sales positions in 2004 and 2006 and the contract specialist positions in 2007.  The court confines its analysis to those events.

The third element – causation – poses an insurmountable barrier for Beecher.  She can try to show causation through direct or circumstantial evidence.  See *Stephens*, 569 F.3d at 787 (affirming summary judgment for employer on retaliation claims under Title VII and § 1981).  Direct evidence can take the form of an employer's admission of discrimination, *id.*, which is absent in this case.  Beecher also can show causation "by constructing a convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker."  *Id.*, quoting *Phelan v. Cook County*, 463 F.3d 773, 779-80 (7th Cir. 2006).

A necessary component of the "convincing mosaic" is evidence that the decisionmaker had actual knowledge of the plaintiff's complaints.  See *Luckie v.*

---

[4](...continued)
of "equal opportunities" at Roche, but she did not discuss race more directly, and the phrase has a range of meanings that can include general fairness to all employees.  See Dkt. No. 50, Ex. 3.  Roche does not press the point at the summary judgment stage, so it is unnecessary to decide whether this earlier conduct was protected activity.  Beecher cannot show that any of her complaints caused Roche to take action against her.

*Ameritech Corp.*, 389 F.3d 708, 715 (7th Cir. 2004).  The undisputed evidence shows that Baker did not know that Beecher had engaged in protected activity when he chose not to promote her in 2004 and 2006.  He later wrote an email that was critical of her "agenda" in 2007, but this was long after he selected others for the promotions to the inside sales positions.  The evidence also shows that Nance did not know of Beecher's protected activity when she hired for the inside sales positions.

For purposes of summary judgment, the court assumes that a jury could conclude from conflicting evidence that Finnegan knew that Beecher engaged in protected activity when he filled the contract specialist positions in 2007.  Finnegan denies that he knew of her activity, but Beecher copied Finnegan on an email complaining explicitly about race discrimination at Roche in November 2006.  Dkt. No. 50, Ex. 14.  Assuming that Finnegan did know about Beecher's protected activity, that knowledge by itself is not sufficient to support an inference of intent to retaliate based on that protected activity.  See *Healy v. City of Chicago*, 450 F.3d 732, 741 (7th Cir. 2006) (affirming summary judgment for employer); *Sanchez v. Henderson*, 188 F.3d 740, 747 (7th Cir. 1999) (same).  Beecher has identified no evidence that can support an inference that Finnegan refused to promote her because she complained of discrimination.  Finnegan's declaration described a neutral hiring process for the contract specialist positions and explained why he believed Cannon and Goodson were more qualified than

Beecher.  Beecher has offered no evidence calling that testimony into reasonable doubt.

Absent evidence tending to show that the hiring managers themselves retaliated against Beecher because of her protected activity, Beecher can show causation under the direct method by showing that a non-decisionmaker desiring to retaliate against her exerted so much pressure on the hiring manager that the hiring manager acted as the non-decisionmaker's "cat's paw," referring to the clever monkey in a fable who convinced a cat to burn its paw retrieving chestnuts from a fire and then ate all the chestnuts himself, leaving none for the cat.  See *Shager v. Upjohn Co.*, 913 F.2d 398, 405 (7th Cir. 1990) (originating "cat's paw" line of cases in Seventh Circuit).

Proving retaliation through the cat's paw method is not easy:  "where a decision maker is not wholly dependent on a single source of information, but instead conducts its own investigation into the facts relevant to the decision, the employer is not liable for an employee's submission of misinformation to the decision maker."  *Metzger v. Illinois State Police*, 519 F.3d 677, 682 (7th Cir. 2008), quoting *Brewer v. Board of Trustees of Univ. of Illinois*, 479 F.3d 908, 918 (7th Cir. 2007); see also *Brewer*, 479 F.3d at 917 ("Where an employee without formal authority to materially alter the terms and conditions of a plaintiff's employment nonetheless uses her 'singular influence' over an employee who does have such

power to harm the plaintiff . . . , the actions of the employee without formal authority are imputed to the employer . . . .").

Beecher has not presented evidence that could permit a reasonable jury to find that the hiring managers who denied her the promotions were the cat's paw of any Roche employees who might have wanted to retaliate against her. Beecher argues that Roche employee John Fletcher unduly influenced Baker to hire Cash rather than Beecher, but the evidence shows only that Fletcher sent an email to some employees (not Baker) to explain some of Beecher's complaints (not specifying race complaints) to help the employees address "cube-talk." Dkt. No. 50, Ex. 1. Baker did consult with Sylvester, who was aware of Beecher's complaints (though the record does not establish that Sylvester was aware of complaints of race discrimination when Baker consulted her), and Sylvester informed Baker that Beecher was an average employee. Baker Dec. ¶ 11. Sylvester's average review of Beecher does not support a reasonable inference of retaliatory intent, especially where the review is supported by so much other evidence in the record indicating that Beecher was an average employee as a customer service representative. In addition, Baker explained in his declaration that he had several reasons for not hiring Beecher. Seifert was aware of (and, the court will assume, unhappy with) Beecher's complaints of race discrimination, but Beecher has offered no evidence that Seifert had undue influence on decisions not to promote her. Finally, the record contains no evidence suggesting that Nance or Finnegan acted as the cat's paw of other Roche employees.

In contrast to the lack of evidence supporting Beecher's allegation that Roche retaliated against her when it did not promote her, the record contains substantial evidence suggesting that Beecher was a competent employee who received average reviews before and after her complaints of race discrimination. The undisputed evidence shows that Beecher was competing for promotions against employees with stronger backgrounds and better reviews. See *Metzger*, 519 F.3d at 681 (defendant may rebut prima facie case of retaliation by showing that employer had a non-discriminatory reason for the employment action). She has not come forward with evidence that would allow a reasonable jury to find that Roche refused to promote her because she complained about alleged race discrimination at the company. Under these circumstances, where a trial could have only one outcome, the court must grant summary judgment. See *Mason v. Continental Illinois National Bank*, 704 F.2d 361, 367 (7th Cir. 1983) (it is "a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained"). Final judgment will be entered for Roche.

So ordered.

Date: September 21, 2009

_David F. Hamilton_

DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

Andrew Dutkanych, III
BIESECKER & DUTKANYCH LLC
ad@bdlegal.com

Roy W. Harris, Jr.
BIESECKER & DUTKANYCH LLC
rharris@bdlegal.com

Hannesson Ignatius Murphy
BARNES & THORNBURG LLP
hmurphy@btlaw.com

Kenneth J. Yerkes
BARNES & THORNBURG LLP
ken.yerkes@btlaw.com